**William ERSEK**

v.

**TOWNSHIP OF SPRINGFIELD, DELAWARE COUNTY, et al.**

**Civ. A. No. 92–4673.**

United States District Court, E.D. Pennsylvania.

May 5, 1993.

Reconsideration Refused June 17, 1993.

Harold I. Goodman, Philadelphia, PA, for plaintiff.

Dean F. Murtagh, Philadelphia, PA, for defendant.

· MEMORANDUM AND ORDER

DITTER, District Judge.

Plaintiff, William Ersek, filed a 12–count complaint against the Township of Springfield, nine of the township's current and former commissioners, its manager and chief of police, one Springfield police detective, and one Springfield police officer. Mr. Ersek alleges civil rights violations under 42 U.S.C. § 1983 and appends several state claims. Defendants have moved to dismiss three of the 12 counts and have requested a more definite statement of three others. For the reasons stated below, I have decided to dismiss the entire complaint—with leave to amend except for one count—both for failure to state a claim on the counts defendants contest as well as for failure to state clearly and specifically what each defendant did and why those actions entitle Mr. Ersek to relief.

## I. Alleged Facts

In considering this motion to dismiss, I must accept the plaintiff's allegations as true. Therefore, the following summary of facts is drawn from the complaint and in no way constitutes any findings of fact.

William Ersek worked as a golf pro at the Delaware County Springfield Country Club for 28 years. On August 8, 1990, according to the complaint, the commissioners of Springfield Township directed the township manager and chief of police to pursue certain charges against Ersek. (Complaint ¶ 34.) Those parties accordingly instructed Detective John W. Ryan and Officer James F. Devaney to obtain warrants to search the country club pro shop and Ersek's home. (*Id.* ¶ 35.) Detective Ryan executed an affidavit of probable cause stating that Ersek was engaged in an "ongoing criminal conspiracy," involving "theft and failure to make required disposition of funds." (*Id.* ¶ 29.) During those searches, Ryan and Devaney confiscated most of his personal financial records, (*id.* ¶ 28), none of which has yet been returned.

Ersek further contends that on August 8, 1990, each township commissioner, the township manager, the chief of police, and Detective Ryan all *knew* that the theft and conspiracy allegations against Ersek were unfounded. (*Id.* ¶¶ 31, 34.)

Ersek further contends that since the time of those searches, the defendants have nei-

ther arrested him nor charged him with other wrongdoing, but have instead waged a two-year campaign to brand him a criminal conspirator and thief. This campaign has included public proclamations of Ersek's guilt, an unsuccessful effort to have him prosecuted by the IRS, and continual harassment at work. (*Id.* ¶¶ 38, 41, 45.)

At the end of December, 1991, Ersek resigned. He claims in his complaint that he was forced to do so because he was tendered a one-year contract with a proposed reduction in salary of approximately 50 percent which made it practically and financially impossible for him to continue in his duties and earn an adequate income. (*Id.* ¶ 43.) He also alleges that he and Springfield Township had entered into his prior, four-year contract in 1987. At that time, the township, through its Board of Commissioners, "stated to plaintiff that it was the township's intention to have plaintiff finish his career as the golf professional at the Springfield Country Club."[1]

As a result of this alleged campaign of abuse, Ersek claims he has lost all chances of comparable future employment in the golfing community, suffered damage to his reputation, and suffered crippling emotional and physical harm.[2] (*Id.* ¶ 47.)

## II. The Partial Motion to Dismiss

The defendants move to dismiss three counts of Ersek's complaint: count II, which alleges that defendants' arbitrary and unreasonable termination of Ersek's employment violated his right to substantive due process; count IV, which alleges that defendants' refusal to hold a post-deprivation hearing violated his right to procedural due process; and count IX, which alleges intentional infliction of emotional distress.

Defendants also move under Federal Rule of Civil Procedure 12(e) for more definite statements of the allegations contained in counts V, VI, and VII, concerning conspiracy, defamation, and invasion of privacy.

### A. *Substantive Due Process*

Count II charges defendants with violating Ersek's right to substantive due process by "arbitrarily and unreasonably terminating plaintiff's employment as the golf professional at the Springfield Country Club." (Complaint ¶ 61.) I will dismiss this count because Ersek's own presentation of the facts contradicts his conclusory assertion that his employment was terminated, and it belies his allegation that the township's proposal of a one-year contract was a deliberate and arbitrary abuse of governmental power.

■ A good portion of the parties' briefs is devoted to the question of whether Ersek needed to establish a constitutionally protected interest in his job before he could claim that the township's acts affecting it violated Ersek's right to substantive due process. In the context of *procedural* due process, it is clear that a plaintiff must show that the interest being denied or infringed upon is constitutionally significant. In other words, the plaintiff must show the interest was a liberty or property interest *entitled* to constitutionally adequate procedures. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Midnight Sessions v. City of Phila.,* 945 F.2d 667, 679 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). But in the context of *substantive* due process, it is arguably sufficient to show only that the government acted arbitrarily—no matter what type of interest was affected. Ersek contends as much citing *Bello v. Walker,* 840 F.2d 1124 (3d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). In *Bello,* a building permit case, the Third Circuit held that an individual's right to substantive due process can be violated by any "deliberate and arbitrary abuse of government power." *Id.* at 1129. *See also Pace Resources, Inc. v. Shrewsbury Twp.,* 808 F.2d 1023, 1085 (3d Cir.) (holding that an arbitrary or irrational zoning regulation can

---

**1.** This allegation is found in ¶ 79 of the complaint. That paragraph is not included as a part of count II. I am assuming it was intended to be.

**2.** Ersek has a history of myocardial infarction and angina for which he had triple bypass surgery in 1984. He also suffers from diabetes. Ersek alleges defendants knew of these conditions but knowingly caused additional angina attacks, headaches, and other severe suffering.

deny substantive due process), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987).

However, because I find that Ersek's own facts contradict his allegation that the township's action was arbitrary and unreasonable, I need not reach the question of whether he had to show a protected property interest in his job.[3] Even if I accept his contention that he did not need to show a protected property interest in order to state a substantive due process claim, I find he has failed to state that defendants acted arbitrarily or unreasonably in proposing to him a one-year contract at a reduced salary. "Substantive due process violations are generally those that are so arbitrary and unreasonable that they lack a substantial relation to the public health, safety and welfare." *Felker v. Christine,* 796 F.Supp. 135, 143 (M.D.Pa.1992). Here, the township's "arbitrary" action was offering a one-year contract at a reduced salary to a 59–year–old golf professional with a history of myocardial infarction, angina, and diabetes who had undergone triple by-pass surgery seven years before. It is not alleged that the township offered Ersek a "practically and financially impossible" contract for any prohibited or pernicious reason.

Nor was there anything inherently unreasonable in the township's proposal. Ersek had no right to the job: his contract expired in 1991, and the township had no more duty to re-offer his employment than Ersek had to accept. Finally, that the township expressed an "intention" in 1987 to have him finish his career at Springfield Country Club does not make the alleged termination (or altered-term contract proposal) any *more* unreasonable. The alleged "intention" goes, if anywhere, toward establishing Ersek's protected property interest in the job, for purposes of arguing a violation of substantive or procedural due process. It does not by any means establish a *right* to the employment, much less some kind of super-right which is inherently "arbitrary" or "unreasonable" to deny. (It is not even clear that the township's offer of a one-year contract constitutes a "denial" of Ersek's expectation to work!)

With regard to the alleged termination of Ersek's employment, Ersek has failed to state a claim of arbitrary governmental behavior actionable under the substantive due

---

**3.** I will opine, however, that I doubt *Bello* and *Pace Resources* apply outside the building and zoning permit contexts. In *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064 (3d Cir.1990), although the court did not have to reach a teacher's substantive due process claim "in light of the preclusive finding that there was a legitimate basis for his termination," it specifically recognized that the teacher had "rel[ied] on cases holding that arbitrary and capricious deprivation *of a property interest* can be a substantive due process violation." *Id.* at 1077 (emphasis added). Similarly, in *Reich v. Beharry,* 883 F.2d 239 (3d Cir.1989), which involved a county's failure to pay a special prosecutor, the Third Circuit discussed which state-created property interests trigger substantive due process, but did *not* hold that arbitrary government action affecting a non-constitutionally protected interest triggers protection. *See id.* at 243–45, and cases cited therein. *See also Buclary v. Borough of Northampton,* No. 90–7950, 1991 WL 133851, at *9–10 (E.D.Pa. July 17, 1991) (holding that because plaintiffs' interest in becoming police officers was not constitutionally significant, defendants' failure to hire them did not state a claim for violation of substantive due process).

In the context of zoning and building permits, the *property* interest is self-evident. This may have prompted the outcomes in *Bello* and *Pace Resources.* In public employment cases, by contrast (whether long-term as in *Bradley* or short-term as in *Reich*), it may still be necessary to show that employment allegedly deprived or affected is protected by the constitution.

Moreover, I note that *Bello* and *Pace Resources* may be short-lived even in the building and zoning contexts. In *Taylor Investment, Ltd., et. al. v. Upper Darby Twp., et. al.,* 983 F.2d 1285, 1290 (3d Cir.1993), a permit revocation case, the court of appeals said in dicta that "to prevail on substantive and procedural due process claims, plaintiffs must have been deprived *of a property interest* because of either arbitrary and capricious government action or a denial of fair legal process" (emphasis added). *See also New Burnham Prairie Homes, Inc. v. Burnham,* 910 F.2d 1474, 1480–81 (7th Cir.1990) (rejecting *Bello* to hold that an arbitrary, irrational denial of a zoning permit cannot violate substantive due process without an additional showing of either a constitutional violation or the inadequacy of state remedies); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 916–17 (2d Cir.) (rejecting *Bello*'s willingness to focus on the land use regulator's arbitrariness without first locating the protected property interest), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).

process clause, and I will therefore dismiss his claim.[4]

### B. *Procedural Due Process*

■ Defendants also move to dismiss count IV, in which Ersek alleges "all defendants" violated his procedural due process rights by refusing to hold a hearing at which he might have contested their accusations and recovered his property.[5] The plaintiff's insistence on lumping all the defendants together in each alleged violation is self-defeating, as well as irresponsible. Does Ersek hold Officer Devaney and former Commissioner Pagano, for example, *equally* responsible for depriving him of this hearing?

In any event, the question of a procedural due process hearing for the return of Ersek's financial papers is premature. Under *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), a state employee who deliberately deprives a person of his property without authorization does not violate that person's right to procedural due process so long as the state provides an adequate, post-deprivation remedy. *See id.* at 533, 104 S.Ct. at 3203. Here, the question of Ersek's state post-deprivation remedy has not yet been addressed. Pennsylvania Rule of Criminal Procedure 324 provides a remedy for persons aggrieved by the seizure of their personal property. Rule 324(a) reads:

> **Motion for Return of Property.** (a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

Pa.R.Crim.P., Rule 324, 42 Pa.C.S.A. (Purdons 1989). While Ersek states that he has repeatedly asked "the defendants" for his property but they have refused to return it, (Complaint ¶¶ 40, 73), he nowhere alleges that any defendant still possesses his property or has the authority to return it, or, more importantly, that he has tried to comply with the provisions set forth in rule 324. The complaint therefore fails to state a claim for a violation of Ersek's right to procedural due process. I will dismiss this count without prejudice.

### C. *Intentional Infliction of Emotional Distress*

■ Defendants also move to dismiss Ersek's claim of intentional infliction of emotional distress, contending that the conduct attributed to them is not "outrageous" enough to constitute this tort. *See Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991 (1987) (holding that the tort of intentional infliction of emotional distress requires outrageous conduct on the part of the tortfeasor); Restatement (Second) of Torts § 46, Comment d (1965). Specifically, defendants compare this suit to *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir.1989), in which the Third Circuit held that an employer's acts, while "deplorable," did not constitute extreme and outrageous conduct under Pennsylvania law. *Id.* at 624. In *Clark*, the defendants forwarded charges to the district attorney concerning the plaintiff, confirmed that plaintiff was being investigated, showed disparaging reports in public, changed plaintiff's duties, deprived him of privileges, and limited his speech at Board meetings. *See id.*

---

4. I recognize that overall, Ersek's complaint describes a pattern of unreasonable and arbitrary government action extending beyond the township's decision to "terminate" his employment or offer him the less attractive contract. Nonetheless, this employment arrangement is all count II addresses.

5. The briefs reflect some confusion as to what the purpose of the hearing would have been. Defendants argue there could have been no procedural due process violation because, as they argued above, Ersek had no property interest in his job. Ersek responds he did indeed have a

protected interest, but in any event the hearing was to concern his confiscated property, not his lost job.

Count IV actually complains that Ersek was denied the opportunity to "contest the charges that have been instituted against him and to recover the property that defendants wrongly seized from him on August 8, 1990." Based on the plaintiff's own argument, I will construe the procedural due process hearing which he was allegedly denied as concerning only the return of Ersek's personal records.

While Ersek's allegations of governmental abuse are arguably more serious than those in *Clark* (Ersek also charges abusive prosecution, constitutional deprivations, and knowing infliction of physical harm), I cannot let the emotional distress claim go forward as drafted. Ersek charges in count IX that: "All defendants, without justification or privilege, have acted outrageously, intentionally and in such an extreme manner, from August 8, 1990 to date, so as to cause plaintiff to suffer severe emotional distress and trauma...." Surely, Ersek does not mean that "all defendants" so acted. Officer Devaney, for example, is alleged only to have executed two search warrants; he is not even alleged to have known, as the others did, that the underlying accusations were meritless. Defendants' motion must be granted without prejudice to Ersek's right to amend, if appropriate.[6]

## III. Motion for a More Definite Statement

■ Since the complaint suffers from similar vagueness in each of the claims of which defendants requested a more definite statement, I will order those clarifications as well.

### A. *Conspiracy*

Count V alleges:

67. All defendants, acting color of state law [sic], have conspired and acted in concert with one another to deprive plaintiff of his civil rights as protected by [42] U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

To plead conspiracy under the civil rights statute, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end. *See Duvall v. Sharp*, 905 F.2d 1188, 1189 (8th Cir.1990); *Safeguard Mut. Ins. Co. v. Miller*, 477 F.Supp. 299, 304 (E.D.Pa.1979). Here, Ersek has alleged nothing about a conspiracy apart from this one conclusory paragraph. If anything, the chain of events

as alleged in the complaint—that the township commissioners instructed the manager and police chief who in turn instructed Ryan and Devaney—suggests that "all defendants" shared no plan whatsoever. Defendants' motion for a more definite statement must be granted.

### B. *Defamation and False Light*

More specificity is also required of Ersek's claims about defamation and invasion of privacy by portrayal in a false light. His complaint contends only that defendants "publicly and privately maintained that plaintiff is guilty of criminal misconduct" (Complaint ¶¶ 2, 38), that "accounts of the searches, seizures and the criminal allegations against plaintiffs [sic] were widely disseminated by defendants and reported in the media," (*id.* ¶ 30), and that "defendants' actions have portrayed plaintiff in a false light," (*id.* ¶ 49).

■ These statements are insufficient. A complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made by whom and to whom. *See Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950, 960 (1988). In short, Ersek must allege which of the many defendants in his suit made which particular statements and how each statement was false.

■ False light claims require the same specificity. This tort is normally associated with the connection of a plaintiff's name or picture with some undesirable public event, *see* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 117, at 863–64 (5th ed.1984), but if Ersek believes he has been portrayed in a false light, he may allege it with particularity.

### C. *Springfield Township and "All Defendants"*

■ Finally, I note two other problems with Ersek's complaint. First, Ersek makes only one allegation under section 1983 against the Township of Springfield:

---

6. Plaintiff is aware, of course, that it is rare to find intentional infliction of emotional distress in

the employment context. *See Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988).

57. The actions of defendants complained of by plaintiff constituted and represented the official policy and practice of the government of Springfield Township. . . .

Ersek correctly references the township's allegedly official custom or policy, *see Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), but his conclusory allegation about the policy is insufficient. Which actions of which defendants represented Springfield's policy? The commissioners' decision to pursue baseless charges against Ersek? The police officers' refusal to return seized property, which they probably no longer have, when Ersek did not even properly pursue its return? Unless Ersek also provides a more definite statement of the section 1983 charges against Springfield Township, I will also dismiss that claim.[7]

Second, as I have noted throughout, Ersek charges "all defendants" with most of these violations in a way which is both confusing and obviously inaccurate. Since he must already clarify three of his original 12 counts, two of his three dismissed claims (if appropriate), and all of his section 1983 allegations against Springfield Township, I will also order him to re-draft the whole complaint with attention to this problem. In his amended complaint, Ersek must state with clarity and specificity which defendant committed what wrongful act and why each such act entitles him to relief.

An order follows.

### ORDER

AND NOW, this 5th of May, 1993, it is hereby ordered that:

1. Defendants' motion to dismiss count II is GRANTED.

2. Defendants' motion to dismiss counts IV and IX is GRANTED without prejudice.

3. Defendants' motion for a more definite statement of the claims in counts V, VI, and VII is GRANTED.

4. Plaintiff shall submit an amended complaint within 20 days in which he provides a more definite statement of counts V, VI, and VII; clarifies his allegations against the Township of Springfield; and states explicitly which defendants are responsible for which wrongful acts.

5. A status conference in this matter will be held in chambers on Thursday, June 3, 1993, at 9:15 a.m.

### MEMORANDUM AND ORDER ON RECONSIDERATION

On May 5, 1993, I granted defendants' partial motion to dismiss and motion for a more definite statement. Because pursuant to those orders, plaintiff would be redrafting significant portions of his complaint, I ordered him to "clarif[y] his allegations against the Township of Springfield" and to "state[ ] explicitly which defendants are responsible for which wrongful acts" as well. Plaintiff now moves for reconsideration of my order on six grounds, each of which I find unpersuasive.

1. *Leatherman*

▮ Plaintiff argues that my dismissal of his complaint (with leave to amend) for failure "to state clearly and specifically what each defendant did and why those actions entitle [him] to relief" is inconsistent with the federal requirement of notice pleading and the Supreme Court's recent decision in *Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The Fifth Circuit had adopted a "heightened pleading standard" in section 1983 cases which stated:

> In cases against government officials involving the likely defense of immunity we require of trial judges that they demand that the plaintiff's complaints state with factual detail and particularity the basis for the claim which necessarily includes

---

7. In charging a municipality with violations of § 1983, particularly in the area of substantive due process, Ersek should take careful note of *Collins v. City of Harker Heights, Texas,* —— U.S.

——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), and *Searles v. SEPTA,* 990 F.2d 789 (3d Cir. 1993).

why the defendant-official cannot successfully maintain the defense of immunity.

*Id.* ——, 113 S.Ct. at 1163, quoting *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985). In *Leatherman,* the Supreme Court rejected this standard. I did not require Ersek to re-draft his complaint to pre-empt any potential defenses, nor to plead with any special care because this is a section 1983 municipal liability suit. I merely told him to make his claims in a straightforward way because his complaint is rife with unsupportable generalizations.[1] In any event, I have not prejudiced Ersek in any way. I gave him leave to re-draft his entire complaint (with one exception, to be addressed below), so that he would plead not with "heightened" particularity but with intelligible particularity.

### 2. *Counts V, VI, and VII*

Next, Ersek contends I should not have granted defendants' motion for a more definite statement on the conspiracy, defamation, and false light charges, arguing that his allegations satisfied the federal pleading requirement that defendants be able to respond. I held, however, not that defendants could not respond, but that Ersek's conclusory allegation of conspiracy was contradicted by the rest of his complaint, which described the defendants acting without any shared plan whatsoever. (*See* opinion of May 5, 1993, at 223.) For this reason, I thought it generous that defendants only asked for a more definite statement and not for outright dismissal.

With regard to the defamation claim, Ersek charges so many defendants with "disseminating" information and "publicly and privately maintain[ing]" Ersek's guilt that his claim cries out for re-drafting. Can a defendant who "privately maintains" an opinion be liable for defamation? Is Ersek serious in his assertion that one who is convinced and remains convinced that another is guilty of a

crime but never says a word about it is liable for defamation?

Last, Ersek's false light claim is entirely unsupported by any fact in his 23–page complaint. (*See* opinion at 223–224.) I granted defendants' motion for a more definite statement of these claims so that Ersek could re-draft them to comport with his factual assertions. This is appropriate under any system of pleading.

### 3. *The Other More Definite Statements*

 Ersek also contends that I should not have ordered clarifications *sua sponte* of the other counts of his complaint. To the extent those counts charge "all defendants" with things that Ersek's own factual assertions contradict, however, or charge (for example) that "the actions of defendants complained of by plaintiff" represented an official policy and practice of Springfield Township, (complaint ¶ 57), my order was wholly appropriate. In modern litigation, a judge is not to be content to loll at the rail and count the days as they slip by. On the contrary, he is responsible not only for steering the litigation ship, but for ensuring that the voyage is as just, speedy, and inexpensive as possible.

### 4. *Count II*

 Ersek also objects to my dismissal with prejudice of count II, which he asserts charged the defendants with violating Ersek's right to substantive due process by arbitrarily and unreasonably terminating his employment with the Springfield Country Club. Ersek contends I should not have decided at this stage that defendants' decision was arbitrary and unreasonable. I did *not,* however, dismiss Ersek's claim for that reason, and since Ersek apparently believes I did, I will state my holding again. I said that Ersek's own presentation of the facts contradicted his conclusory assertion that his employment was terminated. (*See* opinion of May 5, 1993, at 220.) Ersek's complaint had

---

1. I mentioned two in my opinion. Ersek charges "all defendants" with refusing to hold a hearing at which he might have cleared his name or recovered his property. (Complaint ¶¶ 32, 65.) Does he allege, with the seriousness required of an attorney by Rule 11, that the police officer who executed the search warrants is liable be-

cause Ersek did not get a hearing? Ersek also charges "all defendants" with "outrageous" behavior amounting to intentional infliction of emotional distress. (*Id.* ¶ 75.) But Officer Devaney, for example, is not even alleged to have known the accusations were false.

stated that in September, 1991, he was advised that his employment contract, which was scheduled to expire in December, 1991, would be "terminated" as of that date (complaint ¶¶ 42–43.) Thereafter, the Springfield Board of Commissioners "proposed renewing plaintiff's contract of employment for an additional year" at approximately half-salary. (*Id.* ¶ 43.) What I held was that Ersek had failed to state a claim for arbitrary and unreasonable termination because he nowhere alleged he had been terminated, actually or constructively. All Ersek alleges is that he was made an offer he considered unattractive, to which he responded by resigning. (*Id.*) He does not say he attempted a counter-offer, or that this was the Township's final offer, or what, if anything, transformed the Township's altered-term contract proposal into a termination. In short, Ersek's own narration of the events showed there was no termination, much less one that was arbitrary or unreasonable.

### 5. *Procedural Due Process*

Fifth, Ersek asks that I reconsider my decision to dismiss his procedural due process claim without prejudice because he had failed to allege any effort to recover his property through available state post-deprivation proceedings. Ersek contends that: 1) the defendants have not claimed adequate post-deprivation remedies exist; 2) the defendants have not yet "aver[red] or prove[d] they have possession of the property seized from plaintiff"; and 3) *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), does not apply because defendants never said they were unable to give Ersek notice and a hearing *before* they seized his property. (Plf's Mot. for Reconsideration at 10.)

I am not governed by whether or not *defendants* claimed post-deprivation remedies exist, so long as I can see that they do by the statute.[2] Is Ersek seriously contending that a judge can only apply the law which the parties bring to his attention?

With regard to Ersek's second concern, that the defendants have not said they still possess the property, it is *Ersek* who charged the defendants with "refus[ing] to return" his records (complaint ¶ 40). Upon that belief, Ersek can very appropriately pursue the state post-deprivation remedies which, if adequate, undermine his federal constitutional due process claim.

Finally, whether the defendants say so or not, a hearing prior to a seizure of property pursuant to a search warrant is "not only impracticable, but impossible." *Moore v. Warwick Public School Dist. No. 29,* 794 F.2d 322, 328 (8th Cir.1986) (quoting *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981)). Clearly, a search warrant would lose its effectiveness if the subject of that warrant were fully apprised of the time of and reason for the search. In such cases, any adequate remedy must be a post-deprivation remedy. Because Ersek fails to state that the remedies provided to him (whether by Pennsylvania Rule of Criminal Procedure 324 or anywhere else) are inadequate to protect his due process rights, his procedural due process claim was dismissed without prejudice.

### 6. *Intentional Infliction of Emotional Distress*

Finally, Ersek contends that I should not have dismissed his claim for intentional infliction of emotional distress because it, too, satisfied the federal notice pleading requirements. As explained above, however, I dismissed the claim because it was unintelligible regarding which defendant damaged Ersek in what way. I have not yet judged the "outrageousness" of defendants' alleged behavior. I have merely stopped a claim from going forward which charges "all defendants" with things the complaint's own factual assertions contradict. ·

As I have said before, Ersek suffers no prejudice from my order because he can clarify his charges and remove the inherent contradictions. Except for the substantive due process claim which I have dismissed on

---

2. Of course, if this state remedy is actually unavailable or inadequate, plaintiff may bring the claim again stating this inadequacy. That is why I dismissed it without prejudice.

the merits, the entire complaint may be re-drafted and re-filed.

An order follows.

### ORDER

AND NOW, this 17th of June, 1993, plaintiff's motion for reconsideration of my order dated May 5, 1993, is hereby refused.