**VECC, INC., d/b/a Virgilio's Bistro and Virgilio Del Mare, Plaintiffs,**

v.

**BANK OF NOVA SCOTIA, Defendant.**

**No. CIV.A. 00–CV–0030.**

District Court, Virgin Islands, Appellate Division.
D. St. Thomas and St. Jonh.

May 22, 2003.

---

Lee J. Rohn, Law Offices of Lee J. Rohn, Christiansted, St. Croix, VI Counsel for Plaintiffs.

Matthew J. Duensing, Stryker, Duensing, Casner & Dollison, St. Thomas, VI, Counsel for Defendant.

## OPINION REGARDING DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

BROTMAN, District Judge.

Plaintiffs, Virgilio Del Mare ("Del Mare"), a Virgin Islands citizen, and VECC, Inc. ("VECC"), a Virgin Islands corporation, originally initiated this diversity action against Defendant Bank of Nova Scotia ("BNS"), a Canadian corporation, in the St. Croix division of the District Court for the Virgin Islands on March 13, 2000. On Defendant's motion, venue was subsequently transferred to the St. Thomas division of the District Court. Plaintiffs' complaint asserts claims for breach of contract (Count I), breach of fiduciary duty (Count II), and defamation (Count III). Defendant BNS now moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Count III of Plaintiffs' complaint for failure to state a claim upon which relief can be granted. Because the Court is satisfied that Plaintiffs have pled facts sufficient to state a claim for defamation and/or defamation per se, Defendant's motion will be denied.

### I:

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Under this standard, a court's inquiry into the legal sufficiency of a plaintiff's pleadings is necessarily very limited, as the issue to be decided "is not whether plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support [his] claims." *Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1420 (3d Cir.1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The court must accept as true all of the well-pleaded, material allegations contained in the complaint and any reasonable inferences that can be drawn therefrom. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). Dismissal of claims under 12(b)(6) should be granted "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* In examining the legal sufficiency of a litigant's complaint under Rule 12(b)(6), a court may not, as a general matter, give consideration to materials beyond the allegations contained in the pleadings, although matters of public record and exhibits attached to, "explicitly relied upon," or "integral to" the complaint may also be taken into account. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

## II.

The following recitation of the relevant facts underlying Plaintiffs' claims is drawn exclusively from the allegations set forth in Plaintiffs' complaint. On or about February 2000, Plaintiff Virgilio Del Mare, acting pursuant to a valid power of attorney, submitted an application with Defendant BNS to open two business accounts—a payroll account and a general commercial account—on behalf of Plaintiff VECC, a Virgin Islands corporation which owns and operates Virgilio's Bistro in St. Thomas.

(Compl. at ¶¶ 5–6).[1] BNS approved the opening of the accounts and provided VECC with checks and a credit card. (*Id.* at ¶ 7).

On or about February 16, 2000, approximately 16 days after the accounts were opened, VECC received from BNS two money orders for the amount Del Mare had deposited and learned, for the first time, that both of its accounts with the bank had been closed. (*Id.* at ¶ 8). BNS did not provide VECC with advance notice that the accounts would be closed and did not offer any explanation for its actions. (*Id.* at ¶ 9).

Del Mare inquired as to why the two accounts had been closed and was told by an unidentified bank officer that Kerry Swan, BNS's Manager of Commercial Accounts, had directed that the accounts be closed out. (*Id.* at ¶ 11). This same bank official also allegedly told Del Mare that Swan had stated "that [Del Mare] had bad credit and [that] he believed that Del Mare might scam the credit cards and steal moneys from the credit card companies and VECC and take up to a half a million dollars and leave the island." (*Id.* at ¶ 12).

Curt Lake, VECC's principal, then contacted the bank's president, Bob Haines, to inquire why the accounts had been closed. (*Id.* at ¶ 14). Haines claimed he had "no knowledge of the account[s]" and suggested that Lake speak with Swan. (*Id.*). Swan, however, would only speak to Lake in person, leaving him no choice but to arrange for a flight back to St. Thomas. (*Id.* at ¶ 15).

When Lake arrived in St. Thomas on March 6th, Swan initially refused to discuss the accounts, but, after some coaxing, eventually agreed to speak with Lake by phone. (*Id.* at ¶ 16). During this conver-

---

1. Curt Lake, VECC's principal, was off-island at the time undergoing medical treatment, but had executed a valid power of attorney autho-

rizing Del Mare to act on VECC's behalf. (Compl. at ¶ 6).

sation, Swan allegedly told Lake that he was simply trying to "save" him from Del Mare, as Del Mare was a person who was "not to be trusted." (*Id.* at ¶ 17). He claimed to have closed the two accounts out of concern that Del Mare would "scam the credit cards and steal moneys from the credit card companies and VECC and take up to a half million dollars and leave the island." (*Id.* at ¶¶ 12, 17). "Del Mare's credit," he explained, "was no good" and "people with bad credit when given credit cards will do anything and steal anything." (*Id. at* ¶ 17). Swan then warned Lake that "Del Mare would likely steal from him." (*Id.*).

### III.

Defendant moves to dismiss the claims for defamation and defamation per se contained in Count III of Plaintiffs' complaint on essentially two grounds. First, Defendant contends that Plaintiffs have failed to plead, with sufficient detail, the facts needed to establish the essential elements of a cause of action for defamation and/or defamation per se. Second, Defendant argues that the allegedly defamatory statements identified in Plaintiffs' complaint clearly constituted privileged communications and, thus, cannot, as a matter of law, serve as the basis for a defamation claim. The Court will address each of these arguments in turn.

**A. Legal Sufficiency of Plaintiffs' Claims for Defamation and Defamation Per Se**

■ The Federal Rules of Civil Procedure do not ordinarily require a detailed pleading of the facts upon which a claim is based; rather, they simply require that a plaintiff provide "a short and plain statement of the claim showing that [he or she] is entitled to relief." Fed.R.Civ.P. 8(a)(2). This relatively liberal pleading standard is merely intended to ensure that a defendant has been given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Windowizards, Inc. v. Castle "The Window People," Inc.,* 2001 WL 586810 at *1 (E.D.Pa. May 30, 2001) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nothing in the federal rules requires that a court more closely scrutinize allegations of defamation. However, as several courts have observed, the application of Rule 8 to defamation claims tends, in practice, "to be more stringent than ordinary civil suits." *Windowizards,* 2001 WL 586810 at *1 (citing 5 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1245 (2d ed.1990)); *see also Manns v. The Leather Shop, Inc.,* 960 F.Supp. 925, 928 (D.Vi.1997) (Moore, J.) (observing that courts generally subject allegations of defamation "to a more stringent standard of pleading under Rule 8 than is usually the case."). Indeed, at least one court in this jurisdiction has held that a well-pleaded cause of action for defamation "must, on its face, specifically identify what allegedly defamatory statements were made by whom and to whom." *Manns,* 960 F.Supp. at 928–29 (quoting *Ersek v. Township of Springfield, Delaware County,* 822 F.Supp. 218, 223 (E.D.Pa.1993), *aff'd mem.,* 102 F.3d 79 (3d Cir.1996)) (employing the heightened pleading standard imposed on defamation claims under Pennsylvania case law).[2]

**2.** This Court is not convinced that it is appropriate to apply a more stringent pleading standard to claims for defamation. While it is true that the laws of some states impose a heightened pleading standard on such claims, it is the federal rules, and not state law, which govern the application of pleading standards

in federal court. *See Windowizards, Inc.,* 2001 WL 586810 at * 1 (observing that "pleading standards by their nature are procedural and therefore governed by the federal rules of civil procedure as opposed to state practice."); *GE Capital Mort. Serv. v. Pinnacle Mort.,* 897 F.Supp. 854, 867 (E.D.Pa.1995)

 Even were this Court to apply a more exacting pleading standard to Plaintiffs' defamation claim, it would nonetheless have to conclude that Plaintiffs have properly pled the facts necessary to state a cause of action for defamation under Virgin Islands law. To state a claim for defamation under Virgin Islands law, a plaintiff must plead facts which establish four basic elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of "special harm" or the existence of "special harm" caused by the publication. *See* Restatement (Second) of Torts § 558; *see also Manns*, 960 F.Supp. at 929 (citing *Ross v. Bricker*, 770 F.Supp.

1038, 1042 (D.Vi.1991) (Brotman, J.)). Here, Plaintiff Virgilio Del Mare has specifically identified allegedly false and defamatory statements which Swan, in his capacity as an agent and officer of Defendant BNS, allegedly made about his creditworthiness, moral character, and alleged propensity for unlawful conduct. (Compl. at ¶ 12, 17). He further alleges that Swan made these defamatory remarks to Curt Lake, the principal of Plaintiff VECC and a person with whom Del Mare apparently had an existing business relationship. (*Id.* at ¶¶ 5–6; 16–17). Finally, Del Mare alleges that, as a result of Swan's actions, he has suffered both damage to his professional reputation and a "loss of economic opportunities," as well as "psychological damages, physical injuries, medical expenses, humiliation, mental anguish, pain and suffering, [and] loss of enjoyment of life." (*Id.* at ¶ 27).[3] The Court is satisfied

(concluding that the liberal pleading standard set forth in Rule 8(a), "and not Pennsylvania law, provides the standard of specificity applicable to plaintiff's defamation claim."); *see also Lawrence v. City of Bethlehem*, 1997 WL 793012 at *4 (E.D.Pa. Dec.4, 1997) (same); *Tuman v. Genesis Associates*, 935 F.Supp. 1375, 1391 (E.D.Pa.1996) (same). As a general rule, the federal rules merely require that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The limited exceptions to this rule are set forth in Rule 9. Allegations relating to "fraud or mistake" and demands for "special damages," for instance, must be pled with a greater degree of "particularity" or specificity. *See* Fed.R.Civ.P. 9(b) and (g). Thus, nothing in the federal rules requires a plaintiff to set forth detailed pleadings regarding the precise circumstances under which a defendant's allegedly defamatory statements were made. *See Tuman*, 935 F.Supp. at 1391 (observing that a complaint containing a claim for defamation "does not have to plead the precise defamatory statements, nor must [it] name specifically the person who made the statements. So long as the count provides sufficient notice to defendants, it states a claim.") (quoting *Lynch v. Borough of Ambler*, 1995 WL 113290 at *5–6 (E.D.Pa. March 15, 1995)); *see also Jones v. Johnson & Johnson*,

1995 WL 549042 at *1 (E.D.Pa. Sept.13, 1995) ("More stringent pleading is not required in defamation cases."); *Krochalis v. Insurance Company of North America*, 629 F.Supp. 1360, 1368 (E.D.Pa.1985) (noting that the basic elements of a defamation claim need not be pled with particularity).

3. Because "a disparaging remark tending to harm someone in his business or profession fits within the definition of slander [or defamation] per se," "a plaintiff so injured does not need to prove special harm to recover." *Ross*, 770 F.Supp. at 1042. Here, Plaintiff Del Mare has attributed to Swan statements which, by seriously maligning his creditworthiness, moral character, and professionalism, have the potential to adversely affect his business relationships with Lake and other members of the Virgin Islands business community. Such statements may be considered slander per se. *See* Restatement (Second) § 573 ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession ... is subject to liability without proof of special harm."); *see, e.g., Ross*, 770 F.Supp. at 1042 (concluding that the "trial court was correct in treating [Defendant's statements] as slander per se in that they directly called into question [the

that these allegations set forth the elements of a claim for defamation with enough detail to survive a motion to dismiss.[4] After all, the narrow issue to be decided on a 12(b)(6) motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his] claims." *Burlington,* 114 F.3d at 1420. Accordingly, because the Court is satisfied that Plaintiffs' complaint alleges the facts necessary to state a cause of action for defamation or defamation per se, and that it does so with that degree of specificity required to put Defendant on notice of the nature of Plaintiffs' claim and the grounds upon which it rests, the Court will deny Defendant's motion to the extent it challenges the legal sufficiency of the pleadings underlying Count III of Plaintiffs' complaint.

**B. Conditionally Privileged Communications**

■ Defendant also seeks dismissal of Plaintiffs' defamation claims on the grounds that the statements Swan allegedly made to Lake constituted privileged communications. In support of this argument, Defendant invokes §§ 594, 595, and 596 of the Restatement (Second) of Torts. Under these sections, allegedly defamatory statements may be regarded as "conditionally privileged" if the "circumstances [under which they were made] induce a correct or reasonable belief that" the information conveyed "affects a sufficiently important interest" of either the publisher, the recipient, or a third person, or a "common interest" shared by all such persons. These interests may include business, professional, and property interests or other pecuniary interests which enjoy either direct or indirect legal protection. *See, e.g.,* Restatement (Second) of Torts § 594, comments d and e. In the instant case, Defendant argues that the statements Swan made to Lake were privileged because they were made in response to legitimate inquiries from one of the bank's customers and constituted a good faith effort to "protect the lawful business interests common to both BNS and VECC." [5]

■ Defendant's motion is, however, clearly premature. Each of the privileges Defendant seeks to invoke are, after all, considered *conditional* privileges. That is, even were the Court to assume, without deciding, that Swan's statements were presumptively privileged, issues would nevertheless remain with regard to whether Swan "abused" that privilege. *Id.* at

---

physician plaintiff's] 'professionalism' and his conduct in obtaining patients.'').

4. A corporation is not always defamed when false and defamatory statements are directed at an agent acting on the corporation's behalf. *See* Restatement § 561, comment b. However, a corporation may maintain a cause of action for defamation where the alleged defamatory communications also tend to "reflect discredit upon the method by which the corporation conducts its business." *Id.* A corporation may, for instance, have a cause of action against a newspaper which has published an article falsely accusing its treasurer of embezzling funds from the company's corporate accounts if that publication also "tends to affect the credit of the corporation or to reflect discredit on the manner in which it conducts

its business." *Id.* at Illustration No. 3. Here, Plaintiffs have alleged that the defamatory statements Swan allegedly made about Del Mare, VECC's agent, resulted in the closure of VECC's corporate accounts, impaired the corporation's ability to conduct its business, damaged its reputation in the Virgin Islands business community, and deprived it of future business opportunities. (Compl. at ¶¶ 10; 27). Thus, the Court is satisfied that Plaintiffs' complaint also pleads facts sufficient to state a claim for defamation with respect to Plaintiff VECC.

5. Defendant does not specifically identify the precise nature and character of the shared "business interests" Swan's statements were purportedly intended to protect.

§ 594–596 ("Even though the publication is privileged, a particular person cannot avail himself of the privilege if he abuses it."). For instance, a conditional privilege may be abused and its protection lost if the person alleged to have published or uttered the alleged defamatory statements knew them to be false or exhibited reckless disregard for their truth or falsity. *See* Restatement (Second) of Torts § 600. Statements may also be stripped of their privileged status if the published matter was not "reasonably believed to be necessary" to protect the lawful interests that the privilege exists to protect. *Id.* at § 605. Thus, for instance, "one who would be privileged to communicate to a police officer his honest conviction that the plaintiff has committed a criminal offense abuses that privilege ... [if he makes] charges against the plaintiff's moral character in particulars that have no reasonable bearing upon the offense attributed to him." *Id.* at § 605, comment a.

 Here, Plaintiff has alleged that Swan, in his capacity as an officer of Defendant BNS, responded to Lake's inquiries regarding the reasons for the closure of VECC's corporate accounts by making gratuitous comments about Del Mare's moral character and alleged propensity for engaging in illegal activity, comments which a factfinder could reasonably conclude extended far beyond the information necessary to apprise Lake of the bank's concerns about Del Mare's creditworthiness and the purported basis for its decision to terminate the two accounts he had opened on VECC's behalf. *See id.* at § 605A ("One who upon an occasion giving rise to a conditional privilege publishes defamatory matter concerning another that is within the privilege, abuses the privilege if he also publishes unprivileged defamatory matter."). Swan's statements could also be stripped of their privileged status if discovery were to reveal that Swan knew or recklessly disregarded the complete absence of any factual basis for his comments about Del Mare's credit history and/or moral character. *See id.* at § 600. Accordingly, the Court cannot conclude at this stage in the litigation that Swan's allegedly defamatory statements were privileged as a matter of law.

## IV.

Accordingly, for the reasons stated above, the Court will deny Defendant's motion to dismiss Count III of Plaintiffs' complaint for failure to state a claim upon which relief can be granted. The Court will issue an appropriate order.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**THIS MATTER** having come before the Court on Defendant Bank of Nova Scotia's motion to dismiss Count III of Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6);

The Court having considered the submissions of the parties; and

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this 22nd day of May, 2003, HEREBY

**ORDERED** that Defendant Bank of Nova Scotia's motion to dismiss Count III of Plaintiffs' complaint for failure to state a claim upon which relief can be granted is **DENIED.**